# SUPREME COURT OF THE UNITED STATES

## JEFFREY CLYDE PITTS *v.* MISSISSIPPI

ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME
COURT OF MISSISSIPPI

No. 24–1159.　Decided November 24, 2025

PER CURIAM.

Ordinarily, the Sixth Amendment's Confrontation Clause "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy* v. *Iowa*, 487 U. S. 1012, 1016 (1988). In child-abuse cases, however, that rule sometimes gives way. Consistent with the Sixth Amendment, a court may screen a child witness from the defendant when "necessary to protect [the child] from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate." *Maryland* v. *Craig*, 497 U. S. 836, 857 (1990).

Still, before invoking this procedure, a court must proceed with care. It must "hear evidence" and make a "case-specific" finding of "[t]he requisite . . . necessity." *Id.*, at 855. Simply pointing to a state statute that authorizes screening, even one premised on "generalized finding[s]" of necessity, will not suffice. *Coy*, 487 U. S., at 1021. Because the Mississippi Supreme Court departed from these principles, we reverse.

I

In May 2020, A. G. C. spent a weekend visiting her father, Jeffrey Pitts. After returning home, A. G. C. told her mother that she had been sexually abused. Eventually, that report led to criminal charges against Pitts.

At trial, the State moved for permission to place a screen between A. G. C. and Pitts when she took the witness stand. In support of its motion, the State pointed to a

Mississippi statute providing that child witnesses "shall have the . . . righ[t]" to "a properly constructed screen that would permit the judge and jury in the courtroom . . . to see the child but would obscure the child's view of the defendant." Miss. Code Ann. §99–43–101(2)(g) (2020).

Pitts objected. He did not question the statute's mandatory terms. But, he said, those terms had to give way to the Sixth Amendment's demands. 405 So. 3d 20, 31 (Miss. App. 2023). And, he submitted, the State had not attempted to meet, and could not meet, its Sixth Amendment burden of showing that screening was necessary in the particular circumstances of his case. 405 So. 3d 1238, 1243 (Miss. 2025).

The trial judge granted the State's motion. In doing so, the judge reasoned that the "statute . . . appears to be mandatory," and expressed "concerns about [his] ability to declare the statute unconstitutional and fail to follow it." App. to Pet. for Cert. 36a (App.).

After a jury convicted him, Pitts appealed. 405 So. 3d, at 31. Invoking *Coy* and *Craig*, he argued that the trial court had failed to make the case-specific finding of necessity the Sixth Amendment requires and, as remedy, sought a new trial. 405 So. 3d, at 31–35.

Ultimately, a divided Mississippi Supreme Court rejected Pitts's arguments. The court did not dispute that the trial court failed to make a case-specific finding of necessity. See 405 So. 3d, at 1246. Instead, the court sought to distinguish *Coy* and *Craig* on various grounds. 405 So. 3d, at 1248–1252. With those distinctions in hand, the court then proceeded to hold that Mississippi's mandatory statute provided sufficient authority for the screening in this case. *Id.*, at 1254–1255. Unpersuaded, a dissent argued that *Coy* and *Craig* controlled this case and that the trial court failed to comply with their terms. 405 So. 3d, at 1255 (King, J., dissenting).

After the Mississippi Supreme Court ruled, Pitts sought certiorari.

## II

Under *Coy* and *Craig*, a trial court may not deny a defendant his Sixth Amendment right to meet his accusers face to face simply because a state statute permits screening. Nor may a court authorize screening based on "generalized finding[s]" of necessity underlying such a statute. *Coy*, 487 U. S., at 1021. Instead, the Sixth Amendment tolerates screening in child-abuse cases only if a court "hear[s] evidence" and issues a "case-specific" finding of "[t]he requisite . . . necessity." See *Craig*, 497 U. S., at 855. The Mississippi Supreme Court attempted to avoid these constraints by distinguishing *Coy* and *Craig* in various ways. But none of the court's distinctions persuades. Consider the most salient theories it pressed:

First, the court pointed to a victims' rights provision in Mississippi's State Constitution. 405 So. 3d, at 1246–1249. That provision affords the state legislature the power "to enact . . . laws to . . . protect the rights guaranteed to victims." Art. 3, §26A(3). And, the court observed, the state legislature exercised this power when it adopted the mandatory screening law the trial court applied in this case. 405 So. 3d, at 1249. But, true as all that may be, it is also irrelevant. When state law conflicts with the Federal Constitution, the latter controls. Art. VI, cl. 2. And under the Sixth Amendment, neither state screening statutes, nor the "generalized finding[s]" on which they are premised, are enough to overcome a defendant's right to face-to-face confrontation. *Coy*, 487 U. S., at 1021.

Second, the court stressed that Mississippi's statute mandates screening in child-abuse cases while the Iowa statute in *Coy* only afforded trial courts discretion to screen. 405 So. 3d, at 1249–1250. But, if anything, the fact that Mississippi's statute is mandatory—and thus *never* requires a case-specific finding of necessity—renders it "more

constitutionally problematic than the statute at issue in *Coy*, not less so." *Id.*, at 1258 (King, J., dissenting).

Third, the court emphasized that A. G. C. was four years old at the time of trial. *Id.*, at 1250 (majority opinion). But *Craig* involved a 6-year-old witness. 497 U. S., at 840. And though a witness's age is a relevant consideration, *Craig* made plain that a court must "hear evidence" and make a "case-specific" "finding of necessity" before denying a defendant the right to face-to-face confrontation in a child-abuse case. See *id.*, at 855.

Fourth, the court observed that in *Coy* the government and the defendant disputed who committed the alleged assault, while in this case the identity of the alleged perpetrator was not in question. 405 So. 3d, at 1250. But the Sixth Amendment right to confront one's accusers face to face does not only apply in cases where identity is at issue. See *Craig*, 497 U. S., at 840 (involving a known perpetrator). Nor does *Craig*'s exception for child-abuse cases automatically apply just because identity happens to be uncontested. See *id.*, at 855–856.

Finally, the court noted that the child witness and lawyers in *Craig* were placed in a different room from the defendant, with cross-examination conducted over closed-circuit television. 405 So. 3d, at 1251. In this case, by contrast, everyone remained in the courtroom, the witness and defendant separated only by a screen. *Id.*, at 1244, 1251. But both approaches deviate from the Sixth Amendment's usual rule that a defendant is entitled to meet his accusers "face to face." See *Coy*, 487 U. S., at 1016; *Craig*, 497 U. S., at 844. And both thus require a case-specific finding of necessity. *Id.*, at 855.

Before this Court, the State does not so much defend the Mississippi Supreme Court's various efforts to distinguish *Coy* and *Craig* as press a different argument still. As the State sees it, the trial court *did* "hear evidence" and make

a "case-specific" "finding of necessity." See *Craig*, 497 U. S., at 855.

We disagree. At trial, to be sure, the prosecution represented that A. G. C.'s guardian believed it would be difficult for her to testify face to face with her father. App. 6a. But the prosecution expressly rejected the notion that it had "to put on any proof," choosing to rely instead on Mississippi's mandatory "right" to screening. *Id.*, at 6a–7a. And the trial judge proceeded to rule that the "statute . . . appears to be mandatory" and expressed concerns about "fail[ing] to follow it." *Id.*, at 36a. Those arguments and conclusions fall well short of the procedures and findings *Coy* and *Craig* require.

## III

Having resolved that much, we pause to underscore what we leave unresolved. Just because a constitutional error took place at trial does not necessarily mean a new one must be held. Even constitutional errors are sometimes subject to a "harmless-error" rule and do not require a new trial if the prosecution can show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman* v. *California*, 386 U. S. 18, 23–24 (1967). This Court has held that the denial of the right to face-to-face confrontation is among those errors "subject to that harmless-error analysis." *Coy*, 487 U. S., at 1021. Accordingly, on remand the State remains free to argue, and the Mississippi Supreme Court remains free to consider, whether the error in this case warrants a new trial under the harmless-error standard.

The petition for certiorari is granted, the judgment of the Mississippi Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*